## STEINMAN'S, INC.
### *vs.*
## SIDNEY ALBERT

| Superior Court | New Haven County at Waterbury | File No. 13539 |

### MEMORANDUM FILED MARCH 25, 1941.

*Alfred L. Finkelstein,* of Waterbury, for the Plaintiff.

*John H. Cassidy,* of Waterbury, for the Defendant.

*Theodore V. Meyer,* and *Michael J. Galullo,* of Waterbury,
for the Garnishee.

McEVOY, J. This action was originally brought by a
corporation to recover damages from the defendant for alleged
illegal and improper withdrawal and abstraction of corporate
funds. Thereafter the present plaintiff entered as trustee in
bankruptcy of the plaintiff.

This demurrer is addressed to the amended substituted com-
plaint and assigns 14 reasons of demurrer. Taking these rea-
sons in their order:

The first is:

"Facts are not alleged from which the conclusion can be drawn, as alleged, that the defendant illegally and improperly withdrew and abstracted from the assets of the company without giving consideration therefor."

Paragraphs 14 and 17 of the present complaint sufficiently allege that these withdrawals were for other than corporate purposes, tending, at least, to constitute an attempted withdrawal of defendant's original subscription to the capital stock of the corporation. *Hubbard vs. Caserta,* 108 Conn. 567; *Massoth vs. Central Bus Corporation,* 104 id. 683.

The second assigned reason of demurrer is:

"It appears that one payment by the corporation's check of thirty-six hundred dollars was not made to the defendant but to E. H. Steinman (Par. 15) and although it is alleged that E. H. Steinman endorsed the check to the defendant, who deposited it, no facts are alleged which show that the defendant improperly, illegally withdrew or abstracted said sum which was paid to E. H. Steinman."

This ground of demurrer seems to be based upon the allegations of paragraph 15 of the complaint. It does not include or take into consideration the last four words of that paragraph which supplement the preceding statement of that paragraph by the factual allegation that the defendant "received the proceeds thereof", i.e. the thirty-six hundred dollar check. These words remove the allegation from the realm of inference and allege, specifically, that the defendant did receive this money.

The third reason of the demurrer is as follows:

"3. It does not appear that [at] the time each payment was made that the corporation did not have and possess sufficient assets remaining with which to pay its then existing debts."

It would seem that this ground of demurrer is amply met by and comprehended within the allegations of paragraph 18 of the complaint.

The fourth, fifth, sixth and eighth grounds of demurrer are as follows:

"4. It does not appear and it is not alleged that the cor-

poration's debts which existed at the time the payments were made have not been paid."

"5. It does not appear and it is not alleged that creditors of the corporation at the time of said payments have suffered loss or damage as a result of said alleged illegal withdrawal."

"6. It does not appear and it is not alleged that the present plaintiff represents any creditor who existed at the time of said payment."

"8. It does not appear and it is not alleged that the corporation became insolvent at the time of and as a result of said payment to the defendant."

The allegations of paragraph 18, of the amended substituted complaint, do not expressly allege the various matters set out in these four reasons of demurrer.

They do appear to allege an existing and continuing condition or situation.

In 1908 our Supreme Court interpreted the pertinent law as follows: "But it is said that the debts which existed at the time that this conveyance was made, have since, with one exception, been paid; and that a voluntary conveyance can be impeached only by those who were creditors at the time, not by subsequent creditors. This principle clearly has no application where there has been a continued, unbroken indebtedness. The debts are owed, though they may be due to new creditors. It is a most unsubstantial mode of paying a debt, to contract another of equal amount. It is the merest fallacy to call such an act getting out of debt. From the time of this conveyance Mr. Cooke continued to be in debt, and at the time of this assignment that indebtedness had largely increased." *O'Neill vs. Kilduff*, 81 Conn. 116, 122, quoting from *Paulk vs. Cooke*, 39 id. 566.

"It is the condition of insolvency rather than a deliberate intent to injure or defraud any particular person, that invalidates the conveyance. It is true that the insolvent may continue his business, without his true condition being known, so fortunately as to become entirely free from debt....An insolvent has no property he can legally give away. All, whether in his possession or that of his donee, is charged with the satisfaction of his indebtedness. Insolvency is the cause of this charge; the cause and its effect are co-existent. The charge

cannot be released so long as the cause continues, and the trustee in bankruptcy takes all the insolvent's property (including that [which] he has illegally conveyed during the insolvency) for equal distribution among the then existing creditors." *O'Neill vs. Kilduff,* 81 Conn. 116, 123.

If this were an action brought under the pertinent provisions of the Chandler Act (Act of June 22, 1938, c. 575, 52 Stat. 840), and seeking to recover preferential payments made by a bankrupt debtor to a creditor, this decision would be pertinent and material. The action does not seem to be so brought. It seems to be brought against a claimed volunteer, not in an effort to upset or render void or voidable a claimed preferential payment but, on the other hand, a claimed "payment" made without consideration and not in the due course of business.

The citation from the case, just referred to, is made simply as a view of the whole matter taken by our Connecticut Supreme Court in the determination of such matters.

The seventh reason of demurrer is:

"7. It does not appear and it is not alleged that said payments were made with the purpose and intent of defrauding creditors."

In this connection the interpretation of the then existing bankruptcy act by our Supreme Court as appears in the citation upon page 123 of the case cited, *supra,* is in point.

It should further be observed that subdivision d(2) of secton 67 of the Bankruptcy Law of 1938 (the Chandler Act) concludes with the words: "....without regard to his actual intent."

The interpretation, as laid down by our Connecticut Supreme Court, would seem to be consistent with these provisions.

The ninth reason of demurrer is as follows:

"9. Facts are not alleged which made the payments fraudulent under the provisions of the Chandler Act, which is the source of the plaintiff's right of recovery in this, that—(a) it does not appear that the payments were made at a time when Steinman's, Inc., was insolvent or that it was rendered insolvent by said payments or that said payments were not made

in good faith to satisfy an antecedent debt as is required by section 67(d)(2) [§67, subd. d(1)(2)] to entitle the plaintiff to recovery. (b) It is not alleged and it does not appear that the payments or withdrawals were made within four months of the filing of the bankruptcy petition, which are facts necessary to cause said payments or withdrawals to be fraudulent under the provisions of sections 60 or 67 (3) [§67, subd d(3)] of the Chandler Act. (c) It appears that the claimed fraudulent transfers were made more than one year prior to the filing of the bankruptcy petition on July 24, 1940, whereas under section 67d(2) [§67, subd. d(2)] of the Chandler Act it is necessary that the transfers be made within one year of the date of the petition, in order to be fraudulent."

These reasons of demurrer appear to be based upon sections 60 and 67 of the Chandler Act. These provisions of the Chandler Act evidently were intended to apply to dealings or transactions between a bankrupt debtor and a creditor.

These allegations of the complaint may fairly be said to allege no dealings between debtor and creditor but rather to allege voluntary and gratuitous transfers or payments to one not alleged to be a creditor. If not between debtor and creditor then paragraph 9 (b) would not be applicable, but if the application of the Statute of Limitations be claimed it should be especially pleaded.

Reason ten of the demurrer is:

"10. It is not alleged and it does not appear that the payments were made to the defendant with the purpose of preference, that he knew of the insolvent condition of Steinman's, Inc., that he was participating in the fraud and that he knew that he was being preferred."

The ruling on Reason 7 applies to this reason. In addition to this it should be observed that "a man is presumed to intend the natural consequences of his act."

Reason eleven of the demurrer is as follows:

"11. The fact as stated in Paragraph 16 of the complaint that payments made in the sum of $764.50 were entered on Steinman's, Inc., books as interest does not make said payments fraudulent or entitle this trustee in bankruptcy to recover the said amount on the basis of fraud."

The item of this entry in the books of the corporation is not, *per se,* a determining factor. This reason of demurrer is not fundamental but is an isolated matter to be considered in connection with all of the other allegations of the complaint.

Reasons twelve, thirteen and fourteen are:

"12. It does not appear that a petition was filed with the Referee in Bankruptcy, Walter F. Torrance, asking for the approval of the court to permit the plaintiff to prosecute this action and that notice of said petition was given to creditors and all persons interested and that a hearing was had thereon by said Referee and the approval given by him, all prior to September 5, 1940, when the plaintiff's application to be substituted as a plaintiff was filed, and prior to September 13, 1940 when this court granted said application and substituted William Gager, Trustee in Bankruptcy, as party plaintiff."

"13. It does not appear that the Referee's act set forth in Paragraph 21 of the complaint, has been approved and accepted by the District Court of the United States."

"14. It does not appear that the necessary approval of the District Court of the United States, required by Section 11 (c) [§11, subd. c] of the Chandler Act, was or has been obtained in accordance with the rules of procedure and the orders of the United States Court."

These reasons of demurrer may be considered and decided together.

The complaint, as amended (Par. 21), now alleges that "the plaintiff is prosecuting this action....under the order of and with the approval of the United States District Court." Paragraph 21 does not allege that the act of the referee was "accepted" by the United States District Court. It would seem that the use of the word "approved" would be sufficiently inclusive and comprehensive in the absence of any requisite in the law that the word "accepted" also be used.

Subdivision c of section 11 of the Chandler Act contains the word "approved" but not the word "accepted "

Apparently one of the reasons for requiring that the entry or action of the receiver or trustee be approved by the court is to avoid unauthorized expense for counsel or attorneys' fees as evidenced by the New York Local Rule 4, which provides:

"No receiver or trustee in bankruptcy shall employ an attorney, accountant or investigator except on the order of this Court to be made by a Judge thereof and not by a Referee."

It should be observed that this is a local rule apparently adopted to prevent the incurring of such unauthorized expense, but not to specifically prevent or interfere with the granting of authority to the receiver or trustee to intervene or enter his appearance.

On the other hand, the general rule has been interpreted as authorizing the referee, as part of the court, to give this approval.

"The referee or the judge may then authorize the creditor to proceed...." *In re Eureka Upholstering Company, Inc.,* 48 Fed. (2d) 95, 96.

Under the terms of subdivision b of section 11 it is essential that the trustee or receiver have the approval or authorization of the bankruptcy court before he may endeavor to intervene as a plaintiff in the action.

The court whose approval is thus required is the bankruptcy court which appointed the receiver or trustee and the term "court" embraces the referee. *In re Rogers-Pyatt Shellac Co.,* 51 Fed. (2d) 988, 991.

The application for such an order should be by petition or motion for leave to apply to the court where the action is pending, and may be heard at a meeting of creditors. It may, however, be granted *ex parte.*

The approval of the bankruptcy court, whether acting by the referee or the judge, seems to be sufficiently alleged, at least for the purposes of this demurrer.

In so far as the claim of the substituted plaintiff, trustee, is concerned, the bald claim, as alleged, is that the defendant, though nominally acting as an official and on behalf of the corporation, did not so act but, without warrant, caused corporate funds to be paid to a gratuitous volunteer, both directly and vicariously.

The comments and observations above made also apply to the citations urged in the defendant's reply brief dated March 17, 1941.

In each of the cases there cited the relationship alleged is

that of depositor, pledgee, trustee or other connection—all treated as within the relation of debtor and creditor and, there-fore, not within the purview of the allegations of the amended complaint.

For all of these reasons the demurrer is overruled.